1

2

3

4

5                        IN THE UNITED STATES DISTRICT COURT

6                      FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   ALDO LEYVA,                                    No. C 08-1152 SI (pr)

9              Plaintiff,                           **ORDER DENYING DEFENDANT'S**
                                                    **MOTION TO STRIKE; AND**
10     v.                                           **GRANTING DEFENDANT'S MOTION**
                                                    **FOR SUMMARY JUDGMENT**
11  SCOTT KERNAN, individually and in his
    official capacity as Director of Adult Division for
12  the California Department of Corrections and
    Rehabilitation,
13
               Defendant.
14  _____/

15

16          This case is now before the Court for consideration of defendant's motion to strike plaintiff's

17  "Opposition to Defendant's Reply to Plaintiff's Failure to Oppose Defendant's Motion for Summary

18  Judgment" and defendant's motion for summary judgment. [Dkt. Nos. 51 and 71] For the reasons

19  discussed below, the Court DENIES defendant's motion to strike and GRANTS defendant's motion for

20  summary judgment.

21

22                                        **BACKGROUND**

23          The following facts are undisputed unless otherwise noted:

24          Plaintiff is an inmate within the California Department of Corrections and Rehabilitation

25  ("CDCR") and is currently housed at Salinas Valley State Prison.  On June 11, 2007, plaintiff was

26  informed that a publication sent to him titled *M.I.M. ["Maoist Internationalist Movement"] Theory No.*

27  *8, The Anarchist Ideal,* had been returned to the sender as "unauthorized correspondence." [Dkt. No.

28  1, 3:10-13] On June 24, 2007, plaintiff submitted an appeal, which was denied based on an

United States District Court
For the Northern District of California

administrative bulletin that banned MIM publications.  *See* Decl. E. Sullivan Supp. Def.'s Mot. Summ. J. ("Decl. Sullivan"), Exh. B.  After several informal appeals, plaintiff sought review at the formal level, which was also denied based on the administrative memorandum banning MIM publications.  *See id.*

According to the administrative bulletin written by defendant Scott Kernan,[1] "MIM literature advocates seizing public power through armed struggle and overturning prison administrations 'by stripping them of control.'"  *See*  Decl. S. Kernan Supp. Def.'s Mot. Summ. J. ("Decl. Kernan"), Exh. A.  The existence of this type of publication in a prison, the memorandum states, "creates safety and security risks and an atmosphere that is not conducive to the rehabilitative mission of the CDCR."  *Id.* As a result, defendant Kernan authorized an institution-wide ban on all MIM publications.  *See id.*

The basic philosophy of MIM can be found in "What is the Maoist Internationalist Movement," which in relevant part states:

> We want revolutionary armed struggle.  We believe that the oppressors will not give up their power without a fight.  Ending oppression is only possible by building public opinion to seize power through armed struggle.  We believe, however, that armed struggle in the imperialist countries is a serious strategic mistake until the bourgeoisie becomes really helpless.  Revolution will become a reality for North America as the U.S. military becomes over-extended in the government's attempts to maintain world hegemony.

Decl. D. Hawkes Supp. Def.'s Mot. Summ. J. ("Decl. Hawkes"), Exh. B at pg. 2.

Defendant contends that *M.I.M. Theory No. 8* should be excluded from correctional facilities because it "advocates building public opinion to seize power through armed struggle."  *See id.*  To support his claim that the publication could incite violence and challenge authority, defendant states:

> References to seizing power through armed struggle are threaded throughout *M.I.M. Theory No. 8.*  Examples include, but are not limited to: (1) ". . . we look forward to. . . a full-blown attack on established

---

[1] The regulations pursuant to which the administrative bulletin was written are sections 3006 and 3136 of Title 15 of the California Code of Regulations.  Section 3136 provides that prison staff "shall not permit an inmate to send or receive mail which, in their judgment, has any of the characteristics listed in Section 3006(c)."  Section 3006(c) lists numerous prohibited items, including material that contains or concerns "[a]ny matter of a character tending to incite murder; arson; riot; or any form of violence or physical harm to any person . . . ," "[p]lans to disrupt the order, or breach the security, of any facility. . .," and "[m]aterial that is reasonably deemed to be a threat to legitimate penological interests."  Section 3006(c)(1, 5, and 16).  In the present case, the application of the regulations is challenged,  rather than the regulations on their face.

**United States District Court**
For the Northern District of California

power and the state"; (2) ". . . we must be ready in any case to defend the people and to overthrow the state by force"; and (3) "[i]t is significant [sic] important to keep armed struggle. . . to realize the people's revolution." This principle is also predominantly displayed on the organization's website and inside cover of *M.I.M. Theory No. 8*, as well as other issues of *M.I.M. Theory*. *M.I.M. Theory No. 8* even encourages inmates to "[s]truggle with, work with, finance, and join M.I.M. The best way to help prisoners is to overthrow the system that profits from their oppression."

Def.'s Mot. Summ. J. at 4-5 (internal citations omitted).

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California under 28 U.S.C. § 1391 because the events or omissions giving rise to the claims occurred at a correctional facility in Monterey County, within this district. This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, the complaint was verified and therefore is considered as evidence

1  for purposes of deciding the motion.

2      In judging evidence at the summary judgment stage, the Court does not make credibility

3  determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the

4  non-moving party. *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

5  *Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).  The

6  evidence presented by the parties must be admissible.  See Fed. R. Civ. P. 56(e).  Conclusory,

7  speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and

8  defeat summary judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.

9  1979).

10

11                                    **DISCUSSION**

12      Defendant moves for summary judgment and moves to strike plaintiff's opposition to the motion.

13   Before addressing defendant's motion for summary judgment, the Court will address the motion to

14  strike plaintiff's opposition.

15

16  **I.     Defendant's Motion to Strike Plaintiff's Opposition**

17      Plaintiff failed to file his opposition to defendant's motion for summary judgment by the

18  deadline, which this Court set as April 17, 2009.  Defendant filed a reply, noting plaintiff's failure to

19  oppose the summary judgment motion.  Plaintiff then filed an opposition to defendant's reply to

20  plaintiff's failure to oppose defendant's motion for summary judgment. Defendant now moves to strike

21  plaintiff's opposition on the grounds that it was not properly filed and defendant has not been able to

22  address its contents. *See* Motion to Strike Plaintiff's "Opposition to Defendant's Reply to Plaintiff's

23  Failure to Oppose Defendant's Motion for Summary Judgment." [Dkt. No. 70]

24      The Court denies defendant's motion to strike plaintiff's opposition.  In light of plaintiff's pro

25  se status, the Court will allow plaintiff the opportunity to submit his opposition despite his failure to

26  meet the deadline.  If the tardy opposition had made a point that needed a response from defendant, the

27  Court would have permitted such a response.

28

**United States District Court**
For the Northern District of California

1    **II.     Defendant's Motion for Summary Judgment**

2         Defendant has moved for summary judgment on two grounds.  First, defendant contends that the

3    ban on which plaintiff bases his complaint has been rescinded, which makes the case moot.  Second,

4    defendant argues that the institution's rejection of *M.I.M. Theory No. 8* meets the standard set forth in

5    *Turner v. Safley*, 482 U.S. 78 (1987).

6         The Court finds that the dispute is not moot.  Although the complete ban of MIM publications

7    has been rescinded by the CDCR, defendant still seeks to keep this specific publication, *M.I.M. Theory*

8    *No. 8*, away from plaintiff.  Whether this denial was the result of an outright ban or an individual

9    determination does not extinguish plaintiff's legally cognizable interest or preclude the Court from the

10   ability to afford effectual relief.  Article III, § 2, of the Constitution requires the existence of a case or

11   controversy at all stages of federal judicial proceedings, meaning that plaintiff "must have suffered, or

12   be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable

13   judicial decision."  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *see Spencer v. Kemna*, 523

14   U.S. 1, 8-13 (1998).   These requirements are met here, so defendant is not entitled to summary

15   judgment on the basis of mootness.  However, the Court agrees with defendant that *M.I.M. Theory No.*

16   *8* may be rejected under *Turner v. Safley*.

17        Prisoners retain those First Amendment rights not inconsistent with their status as prison inmates

18   or with legitimate penological objectives of the corrections system.  *See Pell v. Procunier*, 417 U.S. 817,

19   822 (1974).  Regulations limiting prisoners' access to publications are valid only if they are reasonably

20   related to legitimate penological interests.  *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (citing

21   *Turner v. Safley*, 482 at 89); *Crofton v. Roe*, 170 F.3d 957, 959 (9th Cir. 1999).  In *Turner v. Safley*, the

22   Supreme Court identified four factors to consider when determining whether a regulation is reasonably

23   related to legitimate penological interests: (1) whether there is a "valid, rational connection between the

24   prison regulation and the legitimate governmental interest put forward to justify it," (2) "whether there

25   are alternative means of exercising the right that remain open to prison inmates," (3) "the impact

26   accommodation of the asserted constitutional right will have on guards and other inmates and on the

27   allocation of prison resources generally," and (4) the "absence of ready alternatives" or, in other words,

28   whether the rule at issue is an "exaggerated response to prison concerns."  *Turner v. Safley*, 482 U.S.

at 89-90.

Because the denial of *M.I.M. Theory No. 8* satisfies the factors outlined in *Turner v. Safely*, defendant is entitled to summary judgment. First, there is a valid, rational connection between the application of the regulation and the legitimate governmental interest put forward to justify it. Defendant asserts that "*M.I.M. Theory No. 8* has the potential to promote violence within a correctional institution" and maintaining the safety and security of the institution is a legitimate governmental interest. *See Thornburgh*, 490 at 415. Defendant's denial of a document that could incite violence bears a clear connection to the interest in maintaining prison security and safety.

The denial satisfies the second factor of the *Turner v. Safely* test because alternative means to exercise the right to free speech remain available to plaintiff. *See Turner v. Safely*, 482 US. at 90. CDCR's complete ban on MIM publications has been rescinded, and inmates are permitted to receive other "social change" literature and publications, so long as they do not conflict with the criteria identified in Section 3006(c) – i.e., so long as they do not "incite violence or physical harm, or disrupt the order, safety and security of an institution." Def.'s Mot. Summ. J. at 12-13. *See Thornburgh*, 490 U.S. at 418; *see, e.g.*, *Stefanow v. McFadden*, 103 F.3d 1466, 1474 (9th Cir. 1987) (even though the prisoner was banned from reading a particular publication, alternative means of exercising his First Amendment rights remain available where access to material which does not violate prison security policy was unaffected).

The third factor of the *Turner v. Safley* test is satisfied because accommodating plaintiff's asserted right to receive *M.I.M. Theory No. 8* may adversely impact the safety and security of inmates and prison personnel, which is a central concern of prison administrators. *Thornburgh*, 490 U.S. at 418. Defendant claims that permitting plaintiff to receive the publication could lead to violence and disorder, and this Court defers to prison administrators' reasonable determination on the matter. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (in a civil rights action brought by an inmate, the court must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining legitimate goals of corrections and for determining the most appropriate means to accomplish them); *see also Turner v. Safley*, 482 U.S. at 90.

The fourth and final factor of the *Turner v. Safley* test is met because plaintiff provides no

United States District Court
For the Northern District of California

1    alternative that accommodates his First Amendment right at *de minimis* cost to valid penological

2    interests.  *Thornburgh*, 490 U.S. at 418; *see, e.g.*, *Stefanow*, 103 F.3d at 1475 (inmate's proposal to

3    allow him only restricted in-cell access to objectionable book did not eliminate security concerns

4    because (1) proposal did nothing to eliminate the concerns for the safety of prison staff who must work

5    with the inmate and (2) inmate could spread the message of the book by speaking to, and sharing the

6    book with, inmates in adjoining cells).   Advocacy of armed rebellion could present a threat to

7    institutional security and, to the extent that advocacy of force or "revolution" or "armed struggle" is

8    suggested in *M.I.M. Theory No. 8*, the Court will defer to the administrative determination that the

9    publication cannot be delivered to plaintiff while he is in prison without risking the safety of inmates

10   and staff..

11        Plaintiff contends that defendant was not motivated by a concern for prison security and instead

12   the decision to deny him *M.I.M. Theory No. 8* was based on its political nature.  Plaintiff argues that

13   defendant has taken quotes from the publication out of context in order to support his position that it

14   presents a threat to the safety and security of inmates and staff.[2]  *See* Plaintiff's Opposition to

15   Defendant's Reply to Plaintiff's Failure to Oppose Defendant's Motion for Summary Judgment

16   ("Plaintiff's Opposition"), pg. 5.  Plaintiff is particularly critical of the following excerpt from

17   defendant's motion for summary judgment brief:

18           References to seizing power through armed struggle are threaded
             throughout *M.I.M. Theory No. 8*.  Examples include, but are not limited
19           to: (1) ". . . we look forward to. . . a full-blown attack on established
             power and the state"; (2) ". . . we must be ready in any case to defend the
20           people and to overthrow the state by force"; and (3) "[i]t is significant
             [sic] important to keep armed struggle. . . to realize the people's
21           revolution."  This principle is also predominantly displayed on the
             organization's website and inside cover of *M.I.M. Theory No. 8*, as well
22           as other issues of *M.I.M. Theory*.  *M.I.M. Theory No. 8* even encourages
             inmates to "[s]truggle with, work with, finance, and join M.I.M.  The best
23           way to help prisoners is to overthrow the system that profits from their
             oppression."
24
25   Def.'s Mot. Summ. J. at 4-5 (internal citations omitted).

26        First, *M.I.M. Theory No. 8* does not actually say ". . .we look *forward* to. . . a full-blown attack

27        _____
             [2] Plaintiff's criticisms of defendant's characterization of the publication reflect a thorough
28   knowledge of the publication's text and context.  It is unclear how or whether plaintiff had access to the
     publication to perform such an analysis.

on established power and the state. . . ." *See* Decl. Hawkes, ¶ 5.  Rather, the correct and complete quote reads:

> But rather than allowing that knowledge to prevent us from waging a socialist revolution, we look *toward* the Great Proletarian Revolution–a full-blown attack on established political power and the state in a socialist country–as further evidence that the vanguard party can in fact lead a society to communism.

*See id.* at Exh. A, pg. 30.  The "Great Proletarian Revolution" to which the author refers occurred during the Spanish Civil War, which took place in the 1930s.  While this quote may create a threat to safety and security because of its overall revolutionary tone and policy, it does not literally anticipate or entreat rebellion.  Regardless of whether it is reflective or prospective, however, it is the reasonable judgment of prison administrators that such statements present a threat to the safety, security, and rehabilitative goals of the correctional facility.

In addition, plaintiff contends that the quote "'. . . we must be ready in any case to defend the people and to overthrow the state power by force'. . ." has been taken out of its proper context by defendant.  *See id.* at Exh. A, pg. 18.  The quoted text is preceded by "[w]e hope to accomplish people's revolution peacefully without armed struggles[]" and was authored by the Political Review Japan Committee ("PRJC"), a separate group with whom MIM has political disagreements.  *Id.*  Therefore, this was akin to a "letter to the editor" in which the author states his own view that is at odds with that of the publication.  This also applies to the quote "'it is significant [sic] important to keep armed struggle...to realize the people's revolution[],'" which is by PRJC rather than MIM.  *See id.*  However, letters to the editor can support the prison administrators' determination to exclude the publication because they can incite the same type of behavior defendant reasonably seeks to prevent.  Accordingly, distinguishing quotes attributable to members of MIM directly as opposed to other authors who MIM has chosen to publish is not a compelling difference.

Plaintiff also disputes defendant's statement that *"M.I.M. Theory No. 8* even encourages inmates to '[s]truggle with, work with, finance, and join MIM.  The best way to help prisoners is to overthrow the system that profits from their oppression."  *See* Def.'s Mot. Summ. J. at 11 (internal citations omitted).  At least as it pertains to the particular text, defendant's quote is misleading.  The text has been excerpted from an advertisement titled "Support MIM's Prison Work," in which MIM is not addressing

United States District Court
For the Northern District of California

1    inmates in particular.  Rather, they are soliciting donations from all readers, which probably implicates

2    inmates less than other segments of the population.  *See* Decl. Hawkes, Exh. A at pg. 87.

3          While the Court finds the aforementioned inaccuracies problematic, the Court  cannot say that

4    defendant fails to meet the standard set by *Turner v. Safley* or that this Court should not defer to the

5    penological agency in charge.  Plaintiff does not present evidence to create a triable issue of fact.

6    Although regulations restricting inmates' First Amendment rights must operate in a neutral fashion,

7    without regard to the content of the expression, regulations are considered neutral for purposes of a

8    *Turner v. Safley* analysis if prison administrators draw distinctions between publications solely on the

9    basis of their potential implications for prison security.  *Thornburgh*, 490 U.S. at 415-16; *compare*

10   *Stefanow v. McFadden*, 103 F.3d 1466, 1473 (9th Cir. 1996) (literature advocating racism and issuing

11   a call to arms for white Christians was properly banned where prison officials reasonably concluded it

12   was so inflammatory that it was reasonably likely to incite violence in the prison) *with McCabe v.*

13   *Arave*, 827 F.2d 634, 638 (9th Cir. 1987) (literature advocating racial purity but not advocating violence

14   or illegal activity cannot constitutionally be banned).  Here, the undisputed facts show that the concern

15   for the safety of the guards and other representatives of the government was the driving force for the

16   confiscation of *M.I.M. Theory No. 8.*  "[J]udgments regarding prison security 'are peculiarly within the

17   province and professional expertise of corrections officials, and, in the absence of substantial evidence

18   in the record to indicate that the officials have exaggerated their response to these considerations, courts

19   should ordinarily defer to their expert judgment in such matters.'" *Turner v. Safley*, 417 at 86 (citation

20   omitted).

21         Because plaintiff has failed to go beyond his initial pleading and present specific facts showing

22   there is a triable issue of fact as to defendant's alleged violation of his First Amendment rights,

23   defendant is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 323.

28   ///

**CONCLUSION**

For the foregoing reasons, defendant's motion to strike plaintiff's reply is DENIED and defendant's motion for summary judgment is GRANTED.

**IT IS SO ORDERED.**

Dated: June 29, 2009

_____
SUSAN ILLSTON
United States District Judge